IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PFIZER INC., PFIZER IRELAND PHARMACEUTICALS UNLIMITED COMPANY, and BRISTOL-MYERS SQUIBB COMPANY,<br><br>           Plaintiffs,<br><br>    v.<br><br>APOTEX INC., et al.,<br><br>           Defendants. | C.A. No. 24-621 (CFC)<br>CONSOLIDATED<br><br>**ANDA CASE** |

## [PROPOSED] STIPULATED ORDER REGARDING THE DISCOVERY OF ELECTRONICALLY STORED INFORMATION

Plaintiffs Pfizer Inc., Pfizer Ireland Pharmaceuticals Unlimited Company, and Bristol-Myers Squibb Company and Defendants Apotex Inc., Apotex Corp., Aurobindo Pharma Ltd., Aurobindo Pharma USA, Inc., Changzhou Pharmaceutical Factory, MSN Laboratories Private Ltd., MSN Pharmaceuticals Inc., Natco Pharma Ltd., Rubicon Research Private Ltd., and Teva Pharmaceuticals Inc. (each individually a "Party," and collectively, the "Parties") stipulate to the following regarding the discovery of electronically stored information ("ESI"):

### I. PRESERVATION OF DISCOVERABLE INFORMATION

The Parties acknowledge their obligation to take reasonable and proportional steps to preserve discoverable information in their possession, custody, or control. Absent a showing of good cause by the requesting Party, the Parties shall not be

required to modify the procedures used in the ordinary course of business to back up and archive data, provided, however, that the Parties shall preserve the nonduplicative discoverable information currently in their possession, custody, or control. Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Federal Rule of Civil Procedure 26(b)(3)(A) and(B).

Absent a showing of good cause by the requesting Party, the categories of ESI identified in **Schedule A** attached hereto need not be preserved.

## II.    SEARCHING FOR ESI

The Parties will search reasonably accessible ESI repositories (e.g., active local drives, active network drives, and email mailboxes) where discoverable information is likely to reside in response to discovery requests seeking information that is relevant and proportional to the needs of the case. The Parties need not search sources that are not reasonably accessible because of undue burden or cost (e.g., sources intended for backup or disaster recovery purposes, such as magnetic tapes, optical disks, SANs, and other forms of backup media; legacy data from obsolete systems; deleted data remaining in fragmented form; transient data; or any other data that would require forensic inspection to retrieve).

## III. CUSTODIAL AND NON-CUSTODIAL DATA SOURCES

In their disclosures pursuant to Paragraph 3 of the Delaware Default Standard for Discovery ("Paragraph 3 Disclosures"), the Parties identified custodians who are most likely to have discoverable information in their possession, custody, or control, and the non-custodial data sources that are most likely to contain non-duplicative discoverable information for preservation and production consideration. A non-custodial data source is a system or container that stores ESI and whose access or use is not limited to a single individual (e.g., enterprise system or database). The Parties shall locate potentially responsive custodial and non-custodial ESI for review and potential production by running the agreed upon search terms (see Section IV) across the ESI collected from their custodians and non-custodial data sources.

Each Party will search for hard-copy documents and ESI in the files of its custodians, and held in non-custodial data sources, without regard to whether such information may be withheld on the grounds of privilege, work product, or any other basis. The identification of custodians and non-custodial data sources in the Parties' Paragraph 3 Disclosures is not intended to limit or alter any Party's obligations to search for and produce hard-copy documents and ESI from relevant custodians and non-custodial data sources. As such, the Parties may request production of documents from additional custodians and non-custodial data sources during fact

discovery. Such requests will be considered in good faith, upon a showing of good cause.

## IV. SEARCH TERMS

The Parties' use of search terms is not a substitute for and does not limit the Parties' obligations to respond to requests for production. The Parties will make a good faith effort to determine search terms that are reasonably tailored and reasonably likely to identify responsive ESI. The Parties agree that their respective search terms shall include any relevant internal project names or codes, to the extent that such names or codes exist. No later than May 2, 2025, the Parties shall exchange a list of intended terms to be used to search their ESI. Defendants may request that Plaintiffs include no more than seven additional search terms, and Plaintiffs may request that each Defendant Group include no more than seven additional search terms. The Parties shall thereafter meet and confer to finalize a list of no more than 15 search terms total for each Party, in view of the Party's own intended terms and the opposing Party's proposed additions thereto. The parties will diligently work to generate final lists of search terms by no later than May 16, 2025.

Indiscriminate terms (e.g., a bare product or company name) may be used in a Party's search of its own documents but are inappropriate to request of the opposing Party unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. A conjunctive combination of multiple words or

phrases (e.g., "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (e.g., "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word or concept. Use of narrowing search criteria (e.g., "and," "but not," "w/#") is encouraged to reasonably tailor discovery. If a search results in an unduly burdensome number of identified documents, the parties shall negotiate in good faith to reduce this number by narrowing the search terms or date range, implementing other search restrictions, or utilizing predictive coding or other forms of technology assisted review until the yield of documents is reasonable.

V.    **PRODUCTION FORMAT**

ESI should be produced, as far as reasonably possible, in the following formats:

A.    **TIFFs.** Responsive ESI must be derived from the original electronic media and converted to single page, TIFF images (with a minimum resolution 300 D.P.I. Group IV compression single-page) with an 81/2 x 11-inch page size. Images shall be clearly labeled to show redacted material and the reason therefore, pursuant to Section VII.

B.    **Native Format.** The Parties generally agree to produce documents as TIFF images, rather than in native format. The Parties agree to reasonably produce

spreadsheets (including Microsoft Excel files) in native format upon Request from the Receiving Party, on a document-by-document basis. If Microsoft Excel files require redactions, the Parties may produce such spreadsheets as images or in a modified native format; if the latter, the redactions will be clearly designated or identified. The Parties may produce presentations (including Microsoft PowerPoint files) in native format. If a Microsoft PowerPoint file requires redactions, it will be produced as TIFF images, and not natively. For any presentation (including Microsoft PowerPoint files) that is produced as TIFF images, such images will be produced in color and include any speaker notes, as well as embedded files. Such embedded files shall be produced in accordance with the provisions of this Order and in a manner that identifies the file as having been embedded in the Microsoft PowerPoint file (e.g., as an attachment). Notwithstanding the foregoing, the Parties reserve the right to request, on a document-by-document basis, production in native format, provided showing of a particularized and reasonable need (e.g., to conduct statistical analysis of raw data that is only reasonably accessible in native format; illegibility of the document in image-format; or poor usability of the document in image-format).

    C.    **Image Load Files.** Documents shall be accompanied by an image load file produced in Opticon (*.OPT) format that should reflect the logical document breaks and parent/child relationship between documents.

D.  **Database Load Files/Cross-Reference Files.**  Documents shall be accompanied by a Concordance delimited (*.DAT) load file containing the appropriate link fields and directory information for every file (e.g., TIFF or native files) produced.

E.  **Metadata.**  The Parties shall ensure that the metadata of all documents is preserved and produced, including when the data is converted from its native format to an image format.  The Parties agree to produce the following metadata, to the extent such metadata exists:

- PRODBEG
- PRODEND
- PRODBEGATTACH
- PRODENDATTACH
- ATTACHRANGE
- CUSTODIAN
- ALLCUSTODIANS
- EMAIL TO
- EMAIL FROM
- EMAIL CC
- EMAIL BCC
- EMAIL SUBJECT
- EMAIL SENTDATE
- EMAIL SENTTIME
- EMAIL RECEIVEDDATE
- EMAIL RECEIVEDTIME
- FILENAME
- AUTHOR
- DATELASTMODIFIED
- DATECREATED
- FILESIZE
- FILEEXTENSION
- MD5HASH
- TEXTLINK
- CONVERSATION INDEX
- FILE PATH

If information in a metadata field is properly the subject of redaction, the field shall include the word "Redacted."

7

**F.     Unique IDs.** Each image (or native file) shall be assigned and produced with a unique Bates number.

**G.     Text files.** The Parties will make reasonable efforts to produce extracted text, to the extent that it is available. If extractable text does not exist, then Optical Character Recognition ("OCR") shall be performed for documents produced in TIFF or native format. Extracted Text and OCR should be produced as follows:

1. Accompanying extracted text files shall be document level text files and should be named with the corresponding Production Bates number field followed by the extension ".TXT."

2. For documents containing redactions, OCR text will be substituted. OCR Text files shall be document level text files and should be named with the corresponding Production Bates number field followed by the extension ".TXT."

Document level Extracted Text/OCR will be provided in a Text folder. Text files will be named per the ProdBeg value for each document. As indicated above, a DocText link will be included in the *.DAT file that will indicate the path to the text file for each record. The text should not be included in the DAT itself, but instead in a separate folder or folders.

**H.     De-Duplication Methodology.** The Parties must remove duplicates from ESI prior to production, on a global basis, using the MD5Hash value. The

Party will provide a multiple custodian field identifying each custodian of the document. If a duplicate exists that is part of a family, the duplicate will only be removed if the entire family is removable as a duplicate (i.e., a single document will not be removed from a non-duplicate family even if the single document is a duplicate).

The Parties may also perform email threading on custodial email ESI and produce only the most inclusive unique thread, so long as lesser-included emails and any attachment in the thread are contained within the final message for production.

**I.     Excluded ESI.** The Parties need not produce non-human readable electronic documents generated by the search terms (for example documents that include only machine-readable language), except upon a showing of good cause by the requesting Party.

## VI.    HARD-COPY DOCUMENTS

The Parties agree they have a separate and independent obligation to produce hard-copy documents responsive to a discovery request. Hard-copy documents shall be scanned and produced in the same manner as electronic documents (i.e., TIFF images and OCR). The Parties recognize that scanned hard-copy documents will not have, and need not be transmitted with, the metadata fields set forth supra in Section V. Instead, hard-copy documents shall be produced with only the following metadata: ProdBeg; ProdEnd; ProdBegAttach; ProdEndAttach; and Custodian.

## VII. REDACTIONS

A. Confidential information relating to products that (i) do not contain rimegepant and (ii) are not related to the research and development of NURTEC ODT® or therapeutic equivalents thereof, may be redacted from documents and things produced or made available for inspection. Each such redaction shall be marked "Redacted – Non-Responsive." No other relevancy redactions are permitted.

B. Redactions for privilege or immunity shall be marked as "Redacted – Privilege."

C. Before production, a Party or third party may redact from all documents, e-mails, and personal electronic files all personal information, including home address, home and cell phone numbers, pager numbers, names of spouses and children, credit card information, benefits information, compensation information, and information found in employee files. Each such redaction shall be marked "Redacted – PI." Nothing in this Section shall be construed as a waiver of any Party's right to seek disclosure of redacted information.

## VIII. LOGGING PRIVILEGED DOCUMENTS OR INFORMATION

Within a reasonable time after the deadline for substantial completion of document production, the Parties will confer regarding whether an exchange of logs identifying documents or information withheld as privileged is warranted. If an

exchange is warranted, the Parties will confer regarding the timing for such an exchange and the format and content of any such logs.

The Parties agree that, if an exchange of privilege logs is warranted, any materials marked with a "Redacted – Privilege" designation are not required to be logged in a Party's privilege log in the first instance. Upon a showing of good cause (e.g., that the nature of the privilege claim cannot reasonably be ascertained), the receiving Party may request that the producing Party log a redacted document. The Parties further agree that they need not include on any privilege log exchanged in this case documents or information generated on or after April 10, 2024.

## IX. MISCELLANEOUS

Nothing in this Order excuses a Party from full and complete compliance with all applicable federal and local rules.

To expedite the discovery process, until the Court has entered this Order, the Parties agree that after counsel has filed this proposed Order, it will be treated as though it had been "So Ordered."

| | |
|---|---|
| MORRIS, NICHOLS, ARSHT & TUNNELL LLP | MORRIS JAMES LLP |
| /s/ *Megan E. Dellinger* | /s/ *Cortlan S. Hitch* |
| Megan E. Dellinger (#5739)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE 19899<br>(302) 658-9200<br>mdellinger@morrisnichols.com | Kenneth L. Dorsney (#3726)<br>Cortlan S. Hitch (#6720)<br>500 Delaware Avenue, Suite 1500<br>Wilmington, DE 19801<br>(302) 658-9200<br>kdorsney@morrisjames.com<br>chitch@morrisjames.com |
| *Attorney for Plaintiffs Pfizer Inc., Pfizer Ireland Pharmaceuticals Unlimited Company, and Bristol-Myers Squibb Company* | *Attorneys for Defendants Apotex Inc., Apotex Corp., and Rubicon Research Private Ltd.* |
| COZEN O'CONNOR | SMITH, KATZENSTEIN, & JENKINS LLP |
| /s/ *Kaan Ekiner* | /s/ *Daniel A. Taylor* |
| Kaan Ekiner (#5607)<br>1201 North Market Street, Suite 1001<br>Wilmington, DE 19801<br>(302) 295-2046<br>kekiner@cozen.com | Neal C. Belgam (#2721)<br>Daniel A. Taylor (#6934)<br>1000 West Street, Suite 1501<br>Wilmington, DE 19801<br>(302) 652-8400<br>nbelgam@skjlaw.com<br>dtaylor@skjlaw.com |
| *Attorney for Defendants Aurobindo Pharma Limited, Aurobindo Pharma U.S.A., Inc., MSN Laboratories Private Ltd., and MSN Pharmaceuticals Inc.* | *Attorneys for Defendant Changzhou Pharmaceutical Factory* |

| | |
|---|---|
| RICHARDS, LAYTON & FINGER, P.A. | SHAW KELLER LLP |
| /s/ Sara M. Metzler | /s/ Nathan R. Hoeschen |
| Kelly E. Farnan (#4395)<br>Sara M. Metzler (#6509)<br>Jessica E. Blau (#7163)<br>One Rodney Square<br>920 North King Street<br>Wilmington, DE 19801<br>(302) 651-7700<br>farnan@rlf.com<br>metzler@rlf.com<br>blau@rlf.com | Karen E. Keller (#4489)<br>Nathan R. Hoeschen (#6232)<br>Emily S. DiBenedetto (#6779)<br>I.M. Pei Building<br>1105 North Market Street, 12th Floor<br>Wilmington, DE 19801<br>(302) 298-0700<br>kkeller@shawkeller.com<br>nhoeschen@shawkeller.com<br>edibenedetto@shawkeller.com |
| *Attorneys for Defendant Natco Pharma, Ltd.* | *Attorneys for Defendant Teva Pharmaceuticals, Inc.* |

December 27, 2024

SO ORDERED this 31st day of December, 202_.

_____
The Honorable Colm F. Connolly
Chief United States District Judge

## **SCHEDULE A**

1. Deleted, slack, fragmented, or other data only accessible by forensics.

2. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

3. On-line access data such as temporary internet files, history, cache, cookies, and the like.

4. Data in metadata fields that are frequently updated automatically, such as last opened dates.

5. Back-up data that are substantially duplicative of data that are more accessible elsewhere.

6. Voice messages.

7. Instant messages that are not ordinarily printed or maintained in a server dedicated to instant messaging.

8. Electronic mail or pin-to-pin messages sent to or from mobile devices (e.g., iPhone and Blackberry devices), provided that a copy of such mail is routinely saved elsewhere.

9. Other electronic data stored on a mobile device, such as calendar or contact data or notes, provided that a copy of such information is routinely saved elsewhere.

10. Logs of calls made from mobile devices.

11. Server, system, or network logs.

12. Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report.

13. Data remaining from systems no longer in use that is unintelligible on the systems in use.