# EXHIBIT 15

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

In re Application of:     Vladimir Coric

Title:                    RIMEGEPANT FOR CGRP RELATED DISORDERS

| | | | |
|---|---|---|---|
| Application No.: | 16/884,196 | Confirmation No.: | 2502 |
| Filed: | May 27, 2020 | Art Unit: | 1625 |
| Customer No.: | 164621 | Examiner: | John S. Kenyon |

*TRANSMITTED VIA EFS-WEB*
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

**RESPONSE TO NON-FINAL OFFICE ACTION**

**UNDER 37 U.S.C. § 1.111, WITH AMENDMENT**

Dear Commissioner:

This Response is submitted in reply to the 12/24/2020 Non-Final Office Action.

The Response has the following sections:

**Amendments to the Claims** begin on page 2 of this paper.

**Remarks** begin on page 5 of this paper.

**Attachment:** Form PTO/SB/08a.

Application No. 16/884,196
Filing Date: May 27, 2020

## AMENDMENTS TO THE CLAIMS

      1.    (Original)  A pharmaceutical composition comprising a pharmaceutically acceptable carrier and a therapeutically effective amount of a CGRP receptor antagonist, or a pharmaceutically acceptable salt thereof, wherein the pharmaceutical composition is in a form of an oral solid molded fast-dispersing dosage form.

      2.    (Original)  The pharmaceutical composition of claim 1, wherein the CGRP receptor antagonist is selected from olcegepant, telcagepant, ubrogepant, atogepant, and rimegepant.

      3.    (Original)  The pharmaceutical composition of claim 1, further comprising gelatin as a carrier.

      4.    (Original)  The pharmaceutical composition of claim 1, further comprising mannitol as a filler.

      5.    (Original)  The pharmaceutical composition of claim 1, comprising from about 70-80 weight% of the CGRP antagonist, about 10-20 weight% fish gelatin, about 10-20 weight% of a filler, and 0.1-5.0 weight% of a flavorant.

      6.    (Original)  The pharmaceutical composition of claim 1, wherein the pharmaceutical composition is capable of disintegrating or dispersing within an interval selected from 1 to 60 seconds, 1 to 30 seconds, 1 to 10 seconds, and 2 to 8 seconds, after being placed in contact with a fluid.

      7.    (Original)  The pharmaceutical composition of claim 6, wherein the fluid comprises saliva.

      8.    (Withdrawn)  A method of treating migraine in a patient in need thereof, comprising administering to the patient a pharmaceutical composition comprising a pharmaceutically acceptable carrier and a therapeutically effective amount of a CGRP receptor antagonist, or a pharmaceutically acceptable salt thereof, wherein the pharmaceutical composition is in a form of an oral solid molded fast-dispersing dosage form.

2

20058-US-CON

Application No. 16/884,196
Filing Date: May 27, 2020

9.      (Withdrawn) The method of claim 8, wherein the CGRP receptor antagonist is selected from olcegepant, telcagepant, ubrogepant, atogepant, and rimegepant.

10.     (Withdrawn) The method of claim 8, comprising from about 70-80 weight% of the CGRP antagonist, about 10-20 weight% fish gelatin, about 10-20 weight% of a filler, and 0.1-5.0 weight% of a flavorant.

11.     (Original) A pharmaceutical composition comprising a pharmaceutically acceptable carrier and a therapeutically effective amount of rimegepant, or a pharmaceutically acceptable salt thereof, wherein the pharmaceutical composition is in a form of an oral solid molded fast-dispersing dosage form.

12.     (Original) The pharmaceutical composition of claim 11, comprising about 75 mg of rimegepant or a pharmaceutically acceptable salt thereof.

13.     (Original) The pharmaceutical composition of claim 11, wherein the rimegepant is in the form of a hemisulfate sesquihydrate salt.

14.     (Original) The pharmaceutical composition of claim 11 in the form of a tablet.

15.     (Original) The pharmaceutical composition of claim 11, that provides an $AUC_{0-t}$ of from about 80-125% of 5000 (hr*ng/mL).

16.     (Original) The pharmaceutical composition of claim 11, comprising from about 70-80 wt% rimegepant hemisulfate sesquihydrate, about 10-20 wt% fish gelatin, about 10-20 wt% of a filler, and 0.1-5.0 wt% of a flavorant.

17.     (Original) The pharmaceutical composition of claim 11, further comprising gelatin as a carrier.

3

A765

Application No. 16/884,196
Filing Date: May 27, 2020

18.    (Currently Amended)  The pharmaceutical composition of claim 11, ~~wherein further~~ ~~comprising mannitol as the~~ filler~~, as examples~~.

19.    (Original)  The pharmaceutical composition of claim 11, wherein the pharmaceutical composition is capable of disintegrating or dispersing within an interval selected from 1 to 60 seconds, 1 to 30 seconds, 1 to 10 seconds, and 2 to 8 seconds, after being placed in contact with a fluid.

20.    (Original)  The pharmaceutical composition of claim 19, wherein the fluid comprises saliva.

4

Application No. 16/884,196
Filing Date: May 27, 2020

## REMARKS

### Introductory Comments

Claims 1-20 are pending in the present application.

Claims 8-10 have been withdrawn.

Claim 18 has been amended.

No clams have been added or cancelled.

Claims 1-7 and 11-20 are presented for consideration by the Examiner.

Reconsideration and allowance of this application are respectfully requested in view of the above amendments and following remarks.

### Claim Amendments

Claim 18 has been amended to recite the pharmaceutical composition of Claim 11, further comprising mannitol as a filler.

### Claim Rejections under 35 U.S.C. § 112

Claim 18 stands rejected under 35 U.S.C. § 112(d) as being of improper dependent form for failing to further limit the subject matter of the claim upon which it depends, or for failing to include all the limitations of the claim upon which it depends.  12/24/2020 Office Action, page 4, para. 14.

The Applicant respectfully traverses this rejection to the extent it may be applicable to Claim 18 as currently amended for at least the following reasons.

The Examiner notes that dependent Claim 18, which is drawn to "the filler" of base Claim 11, does not further limit base Claim 11, since Claim 11 is silent as to "filler".  12/24/2020 Office Action, page 5, para. 15.

As suggested by the Examiner, Claim 18 has been amended to recite the pharmaceutical composition of Claim 11, further comprising mannitol as a filler.

Reconsideration and withdrawal of the rejection of Claim 18 under 35 U.S.C. § 112(d) are respectfully requested.

5

20058-US-CON

A767

Application No. 16/884,196
Filing Date: May 27, 2020

## Claim Rejections under 35 U.S.C. § 103

Claims 1-7 and 11-20 stand rejected under 35 U.S.C. § 103 as being unpatentable over Roberts et al. (U.S. Patent Publication No. 2013/0225636 A1; hereinafter "*Roberts*") in view of Green et al. (U.S. Patent No. 9,192,580 B2; hereinafter "*Green*"). 12/24/2020 Office Action, page 6, para. 19.

The Applicant respectfully traverses this rejection for at least the following reasons.

Claim 1 of the present application recites a pharmaceutical composition comprising a pharmaceutically acceptable carrier and a therapeutically effective amount of a CGRP receptor antagonist, or a pharmaceutically acceptable salt thereof, wherein the pharmaceutical composition is in a form of an oral solid molded fast-dispersing dosage form.

Similarly, Claim 11 recites a pharmaceutical composition comprising a pharmaceutically acceptable carrier and a therapeutically effective amount of rimegepant, or a pharmaceutically acceptable salt thereof, wherein the pharmaceutical composition is in a form of an oral solid molded fast-dispersing dosage form.

In setting forth the obviousness rejection, the Examiner cites Roberts as the primary reference. Roberts teaches a hemisulfate salt of rimegepant and pharmaceutical compositions including the same. Roberts, Abstract. The Office Action acknowledges that Roberts does not teach that the pharmaceutical composition is in the form of an oral solid molded fast-dispersing dosage form. 12/24/2020 Office Action, page 8, last sentence. The Examiner further cites Green to remedy this deficiency.

Green relates to pharmaceutical compositions comprising a carrier and an active ingredient, wherein the carrier is fish gelatin and the composition is a fast-dispersing dosage form designed to release the active ingredient rapidly on contact with a fluid. Green, Abstract.

The Examiner alleges that it would have been obvious for a skilled artisan to prepare a fast-dispersing composition of rimegepant hemisulfate as Green teaches that such dosage form would permit any active ingredient contained therein to disperse or dissolve quickly to provide faster migraine relief than if rimegepant were administered without the fast-dissolving oral solid molded fast-dispersing dosage form of Green. 12/24/2020 Office Action, paragraph bridging pages 10-11.

The Applicant respectfully disagrees. The courts have held that obviousness determination requires finding both "that a skilled artisan would have been motivated to combine the teachings of the prior art . . . and that the skilled artisan would have had a reasonable expectation of success in doing

6

20058-US-CON

A768

Application No. 16/884,196
Filing Date: May 27, 2020

so." Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd., 821 F.3d 1359 (Fed. Cir. 2016).

There is no motivation to combine the teachings of Roberts and Green as Green provides no suggestion to include a CGRP receptor antagonist, such as rimegepant hemisulfate disclosed in Roberts, in the fast-dispersing dosage form.

Rimegepant hemisulfate is an antagonist of a calcitonin gene-related peptide (CGRP) receptor. CGRP is a 37 amino acid neuropeptide, which belongs to a family of peptides that includes calcitonin, adrenomedullin, and amylin. CGRP binds to a CGRP receptor, a transmembrane receptor located within pain-signaling pathways, intracranial arteries and mast cells. Activation of the CGRP receptor is thought to play a causal role in migraine pathophysiology. For example, research and clinical studies have shown that (1) serum levels of CGRP are elevated during migraine attacks, (2) infusion of intravenous CGRP produces persistent pain in migraine sufferers and non-migraine sufferers, and (3) treatment with anti-migraine drugs normalizes CGRP activity. Possible CGRP involvement in migraine has been the basis for the development and clinical testing of a number of compounds, including for example, olcegepant (Boehringer Ingelheim, Ridgefield, CT), telcagepant (Merck Sharp & Dohme Corp., Kenilworth, NJ ), ubrogepant (Allergan PLC, Dublin, Ireland), and rimegepant (Biohaven Pharmaceutical Holding Company Ltd., New Haven, CT).

Green does not suggest including a CGRP receptor antagonist in the fast-dispersing dosage form. At page 7, lines 9-11, Green discloses several anti-migraine agents including dihydroergotamine mesylate, ergotamine tartrate, methysergide maleate, pizotifen maleate, sumatriptan succinate. However, all of these compounds exhibit a mechanism of action that is different from CGRP receptor antagonism. Sumatriptan succinate is a representative of the triptan family that acts as an agonist for serotonin 5-HT$_{1B}$ and 5-HT$_{1D}$ receptors at blood vessels and nerve endings in the brain. Dihydroergotamine mesylate and ergotamine tartrate are examples of ergotamine alkaloids that act as agonists to the serotonin receptors causing vasoconstriction of the intracranial blood vessels. Methysergide maleate is an at the 5-HT$_{1C}$ receptor and a partial agonist at the 5-HT$_{1A}$ receptor. Pizotifen maleate is a benzocycloheptene-based drug, which is a serotonin antagonist acting mainly at the 5-HT$_{1A}$ and 5-HT$_{1C}$ receptors. None of the above compounds acts according to a CGRP receptor antagonism. Green does not disclose a CGRP receptor antagonist and does not provide a suggestion to include it in the fast-dispersing pharmaceutical composition. For at least this reasons, Roberts modified by Green does not render the instant claims obvious.

Further, at the time the present application was effectively filed, a person of ordinary skill in the

7

20058-US-CON

Application No. 16/884,196
Filing Date: May 27, 2020

art could not have expected that a fast-dispersing dosage form including a CGRP receptor antagonist would provide a faster migraine relief, as suggested by the Examiner.  It is well-known that, at the time the present application was effectively filed, no CGRP receptor antagonist had received market approval, and that triptan derivatives was the standard of care for treating migraines.  It was also known that inclusion of a triptane derivative into a fast-dispersing dosage form containing gelatin, such as Zydis® or Orasolv®, resulted in slower absorption of the drug without any effect on the onset of action.  A comparative pharmacokinetic study of rizatriptan 10-mg tablet and 10-mg orally disintegrating tablet (ODT) in healthy subjects describes slower absorption of rizatriptan.  The article particularly states:

> There are currently 2 formulations of rizatriptan available for the acute treatment of migraine: a conventional tablet and an ODT that rapidly dissolves in the mouth and can be administered without water. Pharmacokinetic studies of both formulations have shown that the rate of absorption of rizatriptan ODT is somewhat slower than that of rizatriptan tablet, which was confirmed in the current study, and that the bioavailabilities and $C_{max}$ were similar.

Swan et al. "Pharmacokinetic Profile of Rizatriptan 10-mg Tablet and 10-mg Orally Disintegrating Tablet Administered With or Without Water in Healthy Subjects: An Open-Label, Randomized, Single-Dose, 3-Period Crossover Study" *Journal of Clinical Pharmacology*, **2006**, 46, 172-178, page 177.

The *Highlights of Prescribing Information* for Maxalt® (rizatriptan benzoate) confirms that the $T_{max}$ of the orally disintegrating tablet (a time or period after administration of a drug when the maximum concentration ($C_{max}$) is reached in plasma) is delayed compared to the conventional tablet:

> The bioavailability and $C_{max}$ of rizatriptan were similar following administration of MAXALT Tablets and MAXALT-MLT Orally Disintegrating Tablets, but the rate of absorption is somewhat slower with MAXALT-MLT, with $T_{max}$ delayed by up to 0.7 hour.

*Maxalt®, Highlights of Prescribing Information*, page 10, section 12.3.

As described in the publication, each lyophilized orally disintegrating tablet contained the following inactive ingredients: gelatin, mannitol, glycine, aspartame, and peppermint flavor.  *Id.*, page 10, section 11.

8

20058-US-CON

Application No. 16/884,196
Filing Date: May 27, 2020

A comparative pharmacokinetics study with another anti-migraine drug zolmitriptan showed a similar slower absorption for the orally disintegrating tablet:

> Similar to the $t_{max}$ delay observed with other orally disintegrating tablets (i.e., rizatriptan), the $t_{max}$ of the parent compound was longer with zolmitriptan orally disintegrating tablets (3 hours) versus conventional tablets (1.5 hours).

Gladstone et al. "Newer Formulations of Triptanes: Advances in Migraine Management" *Drugs*, **2003**, 63, 2285-2305, page 2297.

The Highlights of Prescribing Information for Zomig® (zolmitriptan) further states:

> The AUC and $C_{max}$ of zolmitriptan are similar following administration of ZOMIG Tablets and ZOMIG-ZMT Orally Disintegrating Tablets, but the $T_{max}$ is somewhat later with ZOMIG-ZMT, with a median $T_{max}$ of 3 hours for the orally disintegrating tablet compared with 1.5 hours for the conventional tablet.

Zomig®, *Highlights of Prescribing Information*, page 15, section 12.3.

The above references are respectfully submitted in the Information Disclosure Statement together with the present Response. In light of this information, at the time the present application was effectively filed, a person of ordinary skill in the art would have had no reasonable expectation that administration of a fast-dispersing dosage form of an anti-migraine medicine would have resulted in faster absorption and more rapid onset of action than administration of the conventional tablet. Thus, for at least this additional reason, the instant claims are not obvious over Roberts in view of Green.

Moreover, at the time the present application was effectively filed, a person of ordinary skill in the art would have been surprised to learn that administration of a fast-dispersing dosage containing a CGRP receptor antagonist leads to a substantial increase in drug absorption and much higher systemic exposure levels in terms of the area under the curve (AUC), which could potentially translate to an earlier onset of action.

Table 5 of the present application (a portion of which is reproduced below) summarizes pharmacokinetic statistics of Rimegepant ODT versus Rimegepant Conventional Tablet:

9

Application No. 16/884,196
Filing Date: May 27, 2020

| Analyte | Admin | Treatment | Sequence | AUC0_15 min (hr*ng/mL) | AUC0_30 min (hr*ng/mL) | AUC0_1 h (hr*ng/mL) | AUC0_2 h (hr*ng/mL) | AUC0-t (hr*ng/mL) | AUC0-inf (hr*ng/mL) | Residual area (%) | Cmax (ng/mL) | Tmax (hr) | T½ (hr) | λz (1/hr) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BHV3000 | 1 | Rimegepant ODT (Test) | N | 34 | 34 | 34 | 34 | 34 | 34 | 34 | 34 | 34 | 34 | 34 |
| | | | Mean | | | 118.35 | 1049.14 | 4875.13 | 4965.60 | 0.28 | 904.02 | | 7.14 | 0.9923 |
| | | | SD | 3.52 | 54.43 | 251.82 | 566.68 | 1420.06 | 1420.42 | 0.15 | 319.43 | 0.64 | 1.56 | 0.0390 |
| | | | CV% | 157.92 | 111.96 | 78.61 | 47.72 | 28.74 | 28.67 | 63.45 | 35.34 | 41.36 | 19.61 | 20.5978 |
| | | | Min | 0.00 | 0.00 | 1.28 | 301.45 | 2757.35 | 2717.77 | 0.08 | 792.92 | 0.67 | 5.75 | 0.9864 |
| | | | Median | 0.95 | 25.58 | 230.40 | 1041.73 | 4539.62 | 4547.99 | 0.25 | 918.26 | 1.50 | 8.11 | 0.9825 |
| | | | Max | 24.46 | 175.44 | 911.21 | 2171.94 | 8132.82 | 8147.14 | 1.06 | 1355.84 | 2.92 | 10.44 | 0.1205 |
| | | | Geometric Mean | NC | NC | 181.94 | 937.52 | 4673.29 | 4727.08 | 0.25 | 849.54 | 1.34 | 7.48 | 0.9902 |
| BHV3000 | 1 | Rimegepant Tablet (Reference) | N | 34 | 34 | 34 | 34 | 34 | 34 | 34 | 34 | 34 | 34 | 34 |
| | | | Mean | 0.68 | 19.87 | 232.43 | 924.82 | 5291.38 | 5215.36 | 0.26 | 907.56 | | 7.98 | 0.9910 |
| | | | SD | 0.80 | 19.95 | 196.00 | 514.64 | 1552.87 | 1552.75 | 0.16 | 365.37 | 1.04 | 1.73 | 0.0390 |
| | | | CV% | 128.78 | 100.37 | 85.03 | 55.65 | 29.35 | 29.77 | 57.73 | 46.37 | 50.30 | 21.74 | 21.8434 |
| | | | Min | 0.00 | 0.01 | 4.19 | 37.52 | 2637.46 | 2649.68 | 0.08 | 338.78 | 0.67 | 5.31 | 0.9865 |
| | | | Median | 0.43 | 14.61 | 184.65 | 799.93 | 4358.62 | 4363.29 | 0.22 | 903.77 | 2.00 | 8.56 | 0.9890 |
| | | | Max | 3.91 | 98.96 | 893.73 | 1917.51 | 9553.84 | 9565.98 | 0.86 | 2204.05 | 3.58 | 11.50 | 0.1257 |
| | | | Geometric Mean | NC | 9.51 | 199.80 | 743.94 | 4692.65 | 5806.58 | 0.24 | 843.08 | 1.75 | 7.70 | 0.9885 |

As can be seen from Table 5, the mean $T_{max}$ for the ODT formulation of rimegepant decreases by about 28% (1.47 h for the ODT formulation vs 2.04 h for the tablet). Also, the mean systemic exposure levels at 15 minutes are characterized by about 4.9 increase in AUC (3.33 hr*ng/mL for the ODT formulation vs 0.68 hr*ng/mL for the tablet), and the increase is sustained at 30 min (48.61 hr*ng/mL for the ODT formulation vs 19.87 hr*ng/mL for the tablet) and 1 hour (316.30 hr*ng/mL for the ODT formulation vs 232.43 hr*ng/mL for the tablet). This unexpected performance of the ODT formulation of a CGRP receptor antagonist versus the conventional tablet is truly remarkable in view of the prior art.

It is the Applicant's position that the instant claims are not obvious because (1) Roberts in view of Green provides no motivation to make a fast-dispersing composition of a CGRP receptor antagonist, and (2) at the time the present application was effectively filed, a person of ordinary skill in the art would have had no reasonable expectation that a fast-dispersing composition of an anti-migraine agent had resulted in faster absorption that the conventional tablet. The unexpected increase in drug absorption and systemic exposure exhibited by the ODT formulation of rimegepant and described in the present application further supports non-obviousness of the instant claims.

In view of the above, reconsideration and withdrawal of the rejection of Claims 1-7 and 11-20 under 35 U.S.C. § 103 are respectfully requested.

Double Patenting

Claims 1-7 and 11-20 stand provisionally rejected on the ground of anticipatory non-statutory double patenting as being unpatentable over Claims 13-21 of copending Application No. 16/767,134 (hereinafter "reference application"). 12/24/2020 Office Action, page 14, para. 21.

As neither case has been issued or allowed, the claims are not final in both cases. It is therefore not possible to make any determination as to double patenting or obviousness at this time. Hence, it is

10

Application No. 16/884,196
Filing Date: May 27, 2020

requested that this rejection be held in abeyance at least until the present claims are allowed and the reference application has issued. MPEP § 804.01.I (B)(1).

Conclusion

In view of the foregoing amendments and remarks distinguishing the prior art of record, the Applicant respectfully submits that this application is in condition for allowance. Early notification to this effect is requested.

The Examiner is invited to contact the Applicant's attorneys at the below-listed telephone number regarding this Response or otherwise regarding the present application in order to address any questions or remaining issues concerning the same.

All fees due in connection with filing this Response are believed to have been paid. However, the Commissioner is authorized to charge any fees associated with filing this Response, or refunding any fees paid, to Deposit Account 603113.

Respectfully submitted,

/Dmitry Zuev/
Dmitry Zuev, Ph.D.
Attorney for Applicant
Reg. No. 59774

Dated: March 24, 2021

Biohaven Pharmaceuticals, Inc.
215 Church Street
New Haven, CT 06510
203-675-8647

20058-US-CON

11

A773

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 16/884,196 | 05/27/2020 | Vladimir Coric | 20058-US-CON | 2502 |

| | |
|---|---|
| 164621          7590          04/27/2021 | EXAMINER |
| Biohaven Pharmaceuticals, Inc. | KENYON, JOHN S |
| 215 Church Street | |
| New Haven, CT 06510 | |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1625 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 04/27/2021 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

dmitry.zuev@biohavenpharma.com
patents@biohavenpharma.com

PTOL-90A (Rev. 04/07)

| *Office Action Summary* | Application No. | Applicant(s) |
|---|---|---|
| | 16/884,196 | Coric et al. |
| | **Examiner** | **Art Unit** | **AIA (FITF) Status** |
| | JOHN S KENYON | 1625 | Yes |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☑ Responsive to communication(s) filed on 03/24/2021.

    ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2a)☑ This action is **FINAL.**     2b) ☐ This action is non-final.

3)☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims\***

5) ☑ Claim(s) <u>1-20</u> is/are pending in the application.

   5a) Of the above claim(s) <u>8-10</u> is/are withdrawn from consideration.

6) ☐ Claim(s) _____ is/are allowed.

7) ☑ Claim(s) <u>1-7 and 11-20</u> is/are rejected.

8) ☐ Claim(s) _____ is/are objected to.

9) ☐ Claim(s) _____ are subject to restriction and/or election requirement

\* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to **PPHfeedback@uspto.gov.**

**Application Papers**

10)☐ The specification is objected to by the Examiner.

11)☑ The drawing(s) filed on 06/02/2020 and 05/27/2020 is/are: a)☑ accepted or b)☐ objected to by the Examiner.

   Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

   Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
  **Certified copies:**

    a)☐ All    b)☐ Some\*\*    c)☐ None of the:

    1.☐ Certified copies of the priority documents have been received.

    2.☐ Certified copies of the priority documents have been received in Application No. _____.

    3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

\*\* See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☑ Notice of References Cited (PTO-892)

2) ☑ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b)
  Paper No(s)/Mail Date 03/24/2021 and 01/20/2021.

3) ☐ Interview Summary (PTO-413)
  Paper No(s)/Mail Date _____

4) ☐ Other: _____.

Application/Control Number: 16/884,196                                                Page 2
Art Unit: 1625

## DETAILED ACTION

### Notice of Pre-AIA or AIA Status

1.      The present application, filed on or after March 16, 2013, is being examined

under the first inventor to file provisions of the AIA.

2.      In the event the determination of the status of the application as subject to AIA 35

U.S.C. 102 and 103 (or as subject to pre-AIA 35 U.S.C. 102 and 103) is incorrect, any

correction of the statutory basis for the rejection will not be considered a new ground of

rejection if the prior art relied upon, and the rationale supporting the rejection, would be

the same under either status.

### Election/Restrictions

3.      The Examiner has withdrawn the obviousness rejection of 12/24/2020, in light of

Applicants' persuasive traversal of March 24, 2021.

4.      Therefore, the Examiner extended the scope of art search following Markush

search practice to the full scope of "CGRP receptor antagonists" according to instant

claim 1.  This search would encompass independent claim 11.  This search did not

retrieve any new or additional applicable prior art or double patent references.

5.      Therefore, the Election of Species Requirement of 09/30/2020 as it applies to

elected Group I is withdrawn, since Group I is free of the prior art.

6.      All Group I claims have been examined on the merits.

7.      Claims 8-10 remain withdrawn from further consideration pursuant to 37 CFR

1.142(b) as being drawn to a nonelected invention of Group II, there being no allowable

generic or linking claim. Election was made **without** traverse in the reply filed on

11/20/2020.

Application/Control Number: 16/884,196                                                    Page 3
Art Unit: 1625

8.      Non-elected Group II claims 8-10 will be rejoined once Applicants overcome the

non-statutory double patent rejection already of record against Group I.

### Current Status of 16/884,196

9.      Claims 1-7 and 11-20 have been examined on the merits.  Claims 1-7, 11-17,

and 19-20 are original.  Claim 18 is currently amended.

### Information Disclosure Statement

10.     The information disclosure statements (IDS) submitted on 03/24/2021 and

01/20/2021, were filed after the mailing date of the Non-Final Office Action on

12/24/2020.  The submissions are in compliance with the provisions of 37 CFR 1.97.

Accordingly, the information disclosure statements are being considered by the

examiner.

### Specification

11.     The disclosure is objected to because it contains an embedded hyperlink and/or

other form of browser-executable code (see page 11 of Specification). Applicant is

required to delete the embedded hyperlink and/or other form of browser-executable

code; references to websites should be limited to the top-level domain name without

any prefix such as http:// or other browser-executable code. See MPEP § 608.01.

### Response to Arguments

12.     The Examiner acknowledges receipt of Applicants' claim amendments and Reply

of March 24, 2021.

13.     The Examiner has reviewed the claim amendments and Reply of 03/24/2021.

Application/Control Number: 16/884,196                                    Page 4
Art Unit: 1625

14.    The objection for lack of an Oath/Declaration is maintained (see paragraph 12 of

previous Office Action).  Applicants have yet to file an Oath/Declaration.  The original

objection is reproduced, below.

15.    Applicants added -- further comprising -- to claim 18 thereby rendering moot the

rejection under 35 U.S.C. 112(d) (see paragraphs 13-15 of previous Office Action).  The

phrase -- further comprising mannitol as a filler – of amended claim 18 properly adds a

new/further limitation to claim 18 that does not need to be present in base claim 11.

16.    The obviousness rejection (see paragraphs 16-19 of previous Office Action) is

withdrawn due to Applicants' persuasive traversal of March 24, 2021.

==The Examiner finds the following points from the Remarks of 03/24/2021==

==particularly persuasive (these points justify withdrawal of the obviousness rejection):==

(1)  At the time the present application was effectively filed, a person of ordinary

skill in the art could not have expected that a fast-dispersing dosage form including a

CGRP receptor antagonist would provide faster migraine relief, as suggested by the

obviousness rejection.  Per Applicants, at the time the instant application was effectively

filed, no CGRP receptor antagonist had received market approval, and that triptane

derivatives was the standard of care for treating migraines.  Furthermore, inclusion of a

triptane derivative into a fast-dispersing dosage form containing gelatin, such as Zydis ®

or Orasolv®, resulted in slower absorption of the drug without any effect on the onset of

action.  A comparative pharmacokinetic study of rizatriptan 10-mg tablet and 10-mg

orally disintegrating tablet (ODT) in healthy subjects describes slower absorption of

rizatriptan (Swan reference recited within page 8 of 03/24/2021 Remarks).  Moreover, a

comparative pharmacokinetics study with another anti-migraine drug zolmitriptan

Application/Control Number: 16/884,196                                    Page 5
Art Unit: 1625

showed a similar absorption for the orally disintegrating tablet (page 9 of 03/24/2021

Remarks).

(2)  At the time the present application was effectively filed, a person of ordinary

skill in the art would have been surprised to learn that administration of a fast-dispersing

dosage containing CGRP receptor antagonist leads to a substantial increase in drug

absorption and much higher systemic exposure level in terms of AUC, which could

potentially translate to an earlier onset of action (page 9 of the 03/24/2021 Remarks).

17.    The non-statutory double patent rejection of claims 1-7 and 11-20 (paragraphs

20-21 in previous Office Action) against co-pending 16/767,134 is maintained (hence

this Action is made FINAL).  Applicants cannot request to hold this rejection in

abeyance.  The co-pending reference '134 cannot currently be used as a statutory

double patent reference.  Thus, a Terminal Disclaimer filed in the instant against '134

will permit rendering this rejection moot (in the instant application) in time for rejoinder of

non-elected Group II claims.

        This rejection is reproduced, below.

### *Oath/Declaration*

18.    Applicants have yet to file an Oath/Declaration.  Applicants must file an

Oath/Declaration no later than the date the issue fee payment is due to avoid

abandonment of this application.  See MPEP 1303.

### *Double Patenting*

19.    The nonstatutory double patenting rejection is based on a judicially created

doctrine grounded in public policy (a policy reflected in the statute) so as to prevent the

unjustified or improper timewise extension of the "right to exclude" granted by a patent

Application/Control Number: 16/884,196                                    Page 6
Art Unit: 1625

and to prevent possible harassment by multiple assignees. A nonstatutory double

patenting rejection is appropriate where the conflicting claims are not identical, but at

least one examined application claim is not patentably distinct from the reference

claim(s) because the examined application claim is either anticipated by, or would have

been obvious over, the reference claim(s). See, e.g., *In re Berg*, 140 F.3d 1428, 46

USPQ2d 1226 (Fed. Cir. 1998); *In re Goodman*, 11 F.3d 1046, 29 USPQ2d 2010 (Fed.

Cir. 1993); *In re Longi*, 759 F.2d 887, 225 USPQ 645 (Fed. Cir. 1985); *In re Van Ornum*,

686 F.2d 937, 214 USPQ 761 (CCPA 1982); *In re Vogel*, 422 F.2d 438, 164 USPQ 619

(CCPA 1970); *In re Thorington*, 418 F.2d 528, 163 USPQ 644 (CCPA 1969).

A timely filed terminal disclaimer in compliance with 37 CFR 1.321(c) or 1.321(d)

may be used to overcome an actual or provisional rejection based on nonstatutory

double patenting provided the reference application or patent either is shown to be

commonly owned with the examined application, or claims an invention made as a

result of activities undertaken within the scope of a joint research agreement. See

MPEP § 717.02 for applications subject to examination under the first inventor to file

provisions of the AIA as explained in MPEP § 2159. See MPEP § 2146 *et seq.* for

applications not subject to examination under the first inventor to file provisions of the

AIA. A terminal disclaimer must be signed in compliance with 37 CFR 1.321(b).

The USPTO Internet website contains terminal disclaimer forms which may be

used. Please visit www.uspto.gov/patent/patents-forms. The filing date of the application

in which the form is filed determines what form (e.g., PTO/SB/25, PTO/SB/26,

PTO/AIA/25, or PTO/AIA/26) should be used. A web-based eTerminal Disclaimer may

be filled out completely online using web-screens. An eTerminal Disclaimer that meets

Application/Control Number: 16/884,196                                              Page 7
Art Unit: 1625

all requirements is auto-processed and approved immediately upon submission. For

more information about eTerminal Disclaimers, refer to

www.uspto.gov/patents/process/file/efs/guidance/eTD-info-I.jsp.

20.     **Claims 1-7 and 11-20** are provisionally rejected on the ground of anticipatory

nonstatutory double patenting as being unpatentable over claims 13-21 of co-pending

Application No. 16/767,134 (reference application). The reference claims of 05/27/2020

and the instant claims of 03/24/2021 were used to make this rejection.

        Although the claims at issue are not identical, they are not patentably distinct

from each other because the reference claims anticipate the instant claims. Reference

claims 13 and 19, drawn to an oral solid molded fast-dispersing dosage form of a

pharmaceutical composition comprising rimegepant, a CGRP receptor antagonist,

anticipate **instant claims 1-2 and 11**, drawn to the same; reference claims 13 and 19-

20, drawn to said pharmaceutical composition comprising fish gelatin as carrier and

mannitol as filler, anticipate **instant claims 3-4 and 17-18**, drawn to the same;

reference claim 20 drawn to 70-80 weight% rimegepant hemisulfate sesquihydrate, 10-

20 wt% fish gelatin, and 10-20 wt% filler, and 0.1-5 wt% of flavorant, anticipates **instant

claims 5 and 16**, drawn to the same weight percentages.

        Furthermore, the $AUC_{0-t}$ limitations of reference claim 13 anticipates **instant

claim 15**, drawn to the same $AUC_{0-t}$ limitations. The tablet of reference claim 16

anticipates the "tablet" of **instant claim 14**. The hemisulfate sesquihydrate salt of

reference claim 15 anticipates the same of **instant claim 13**. Additionally, 75 mg of

rimegepant of reference claim 14 anticipates the same of **instant claim 12**.

Application/Control Number: 16/884,196                                         Page 8
Art Unit: 1625

  The "fast dispersing dosage form" of the reference claims indicates that the

composition disintegrates at the same range of seconds as the instant claims, hence

anticipating those instant claims (compare lines 25-34 of page 13 of reference

Specification which defines "fast-dispersing dosage form" of reference claim 19 with

**instant claims 6-7 and 19-20**).

  This is a provisional nonstatutory double patenting rejection because the

patentably indistinct claims have not in fact been patented.

  The Action can be made FINAL since the non-statutory double patent rejection is

being maintained from the last Office Action with no substantive changes.

### *Conclusion*

21. No claims are presently allowable as written.

22. There is no known prior art reference that either teaches or anticipates a

pharmaceutical composition comprising a pharmaceutically acceptable carrier and a

therapeutically effective amount of a CGRP receptor antagonist, or a pharmaceutically

acceptable salt thereof, wherein the pharmaceutical composition is in a form of an oral

solid molded fast-dispersing dosage form, according to instant claims 1 and 11.

23. The references ROBERTS (U.S. 2013/0225636 A1) and GREEN (U.S. 9,192,580

B2) are no longer considered to be prior art references given Applicants' persuasive

traversal of 03/24/2021. See paragraph 16, above, for the most persuasive of

Applicants' remarks from March 24, 2021 which led the Examiner to withdraw the

obviousness rejection.

24. **THIS ACTION IS MADE FINAL.** Applicant is reminded of the extension of time

policy as set forth in 37 CFR 1.136(a).

Application/Control Number: 16/884,196                                               Page 9
Art Unit: 1625

A shortened statutory period for reply to this final action is set to expire THREE
MONTHS from the mailing date of this action. In the event a first reply is filed within
TWO MONTHS of the mailing date of this final action and the advisory action is not
mailed until after the end of the THREE-MONTH shortened statutory period, then the
shortened statutory period will expire on the date the advisory action is mailed, and any
extension fee pursuant to 37 CFR 1.136(a) will be calculated from the mailing date of
the advisory action. In no event, however, will the statutory period for reply expire later
than SIX MONTHS from the mailing date of this final action.


Any inquiry concerning this communication or earlier communications from the
examiner should be directed to JOHN S KENYON whose telephone number is
(571)270-1567. The examiner can normally be reached on Monday-Friday 10a-6p.

Examiner interviews are available via telephone, in-person, and video
conferencing using a USPTO supplied web-based collaboration tool. To schedule an
interview, applicant is encouraged to use the USPTO Automated Interview Request
(AIR) at http://www.uspto.gov/interviewpractice.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's
supervisor, Anna Jiang can be reached on (571) 272-0627. The fax phone number for
the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the
Patent Application Information Retrieval (PAIR) system. Status information for
published applications may be obtained from either Private PAIR or Public PAIR.
Status information for unpublished applications is available through Private PAIR only.

Application/Control Number: 16/884,196                                    Page 10
Art Unit: 1625

For more information about the PAIR system, see https://ppair-

my.uspto.gov/pair/PrivatePair. Should you have questions on access to the Private

PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free).

If you would like assistance from a USPTO Customer Service Representative or access

to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-

272-1000.


/JOHN S KENYON/
Primary Patent Examiner, Art Unit 1625